## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | * |
| | * |
| COPSYNC, INC. | * CASE NO.: 17-12625 |
| | * |
| Debtor. | * |
| | * CHAPTER 11 |
| | * |
| | * |
| H. KENNETH LEFOLDT, JR., TRUSTEE OF | * |
| THE COPSYNC, INC. LIQUIDATION TRUST | * |
| | * |
| Plaintiff, | * |
| | * |
| versus | * |
| | * |
| BRANDON-COPSYNC LLC, BRANDON | * Adv. Proc. No. _____ |
| FLANAGAN, AND DONALD FLANAGAN | * |
| | * |
| Defendants. | * |
| | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

NOW INTO COURT, through undersigned counsel, comes Plaintiff, H. Kenneth Lefoldt, Jr., in his capacity as the duly appointed and acting trustee (the "Trustee") of the COPsync, Inc. Liquidation Trust  (the "Trust"), who files this Complaint against Brandon-COPsync LLC, Brandon Flanagan, and Donald Flanagan (collectively "Defendants").   In support of his Complaint, the Trustee respectfully avers as follows:

### I.       JURISDICTION & VENUE

1.       This adversary proceeding action is brought by the Trustee against Defendants pursuant to 28 U.S.C. §§ 1334, 157, and Federal Rule of Bankruptcy Procedure 7001(1), seeking

to recover amounts owed to the Trust and seeking to remedy Defendants' other violations of law through additional claims for other damages.

2.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 11 U.S.C. § 157 and 28 U.S.C. § 1334.

3.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C) and (E).  The claims asserted against Defendant Brandon-COPsync LLC are a core matter, because Brandon-COPsync LLC has filed a claim in the COPsync, Inc. bankruptcy case (the "Bankruptcy Case").  28 U.S.C. § 157(b)(2)(C).  The claims against the other defendants are core matters pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (E).

4.      The Trustee consents to entry of a final judgment by this Court. *See* Fed. R. Bankr. R. 7008.

5.      This Court has jurisdiction over the Defendants named herein because the Defendants have sufficient minimum constants with Louisiana so as to render the exercise of jurisdiction by the Louisiana courts permissible under traditional notions of fair play and substantial justice.  Moreover, this Court has personal jurisdiction over the Defendants under Rule 7004 of the Federal Rules of Bankruptcy Procedure.

6.      Venue of Debtor's bankruptcy cases and this adversary proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.      PARTIES

7.      On September 29, 2017 (the "Petition Date"), COPsync, Inc. ("COPsync" or "Debtor")  filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before the United States Bankruptcy Court for the Eastern District of Louisiana (the "Bankruptcy Case").  [ECF No. 1].  The Debtor continued lean operations for purposes of completing the sale

of its assets and other wind-down efforts as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

8.      On September 21, 2018, the Bankruptcy Court entered an order (the "Confirmation Order") confirming the Third Amended Plan of Liquidation pursuant to Chapter 11 of the United States Bankruptcy Code (the "Third Amended Plan"). *In re COPsync, Inc.*, Case No. 17-12625, Bankr. E.D. La., [ECF No. 322]. Pursuant to the Confirmation Order, H. Kenneth Lefoldt was appointed as Trustee of the Liquidation Trust and expressly authorized and empowered to pursue any and all claims, demand, and causes of action transferred to the Trust. *See* Confirmation Order at p. 7 [ECF No 335].

9.      In his capacity as the Liquidating Trustee for the COPsync, Inc. Liquidation Trust, Plaintiff brings the claims herein against the parties listed below.

10.     Defendant, Brandon-COPsync LLC, is a Massachusetts limited liability company, with its principal business place of business located at 222 Rosewood Dr., Suite 810, Danvers, Massachusetts, 01923. It may be served through its registered agent for service of process, Donald B. Flanagan, at 222 Rosewood Dr., Suite 810, Danvers, Massachusetts, 01923.

11.     Defendant, Brandon D. Flanagan, is an individual of the full age of majority residing at 6 Hancock Road, Wakefield, MA 01180.

12.     Defendant, Donald B. Flanagan, is an individual of the full age of majority residing at 16 Shasta Dr, North Reading, MA  01864. Donald Flanagan was manager of Brandon Copsync LLC during the relevant period.

### III.   FACTUAL BACKGROUND

#### A.   The COPsync 911 Software

13.     Debtor was created in 2005 as a "software for a service" or "SaaS" platform for law enforcement to share real-time information amongst counties, agencies, and departments, and sold or licensed under the COPSYNC Trademark.

14.     Debtor's software was initially sold and licensed under the COPSYNC Trademark.  Thereafter, another software product was created and sold or licensed under the COPSYNC911 Trademark that incorporates both the COPSYNC Trademark and the COPSYNC911 Trademark.   (Hereinafter, the COPsync911 software and the COPSYNC software are collectively referred to as "COPsync911 Software".)

15.     When introduced, the COPsync911 Software provided law enforcement the first and only in-car real-time information sharing and data communication network with threat alert service for schools and other potentially at-risk facilities.  When activated by a customer's staff located in a customer's building, the COPsync911 Software operates by sending a real-time threat alert, immediately connecting the staff member of a building to the five closest officers to that location.  A text alert is sent to these officers and two real-time chat windows are created, one between the staff member and the dispatcher and the other between the staff member and the law enforcement officer nearby.  Through the system, the officer is provided a map of the building, and both the officer and the dispatcher can receiver further information from the staff member.   Real time chat with a dispatcher allows the staff member to provide further information to responding officers.

16.     Debtor primarily sold, licensed, and distributed its software and related products and/or services, including the COPsync911 Software, through direct sales and through a licensed

distributor to state, federal, county, and local law enforcement departments, schools, and private sector companies that are in at-risk facilities.

### B.     The COPsync / Brandon-COPsync LLC Distribution Agreement

17.     Debtor's COPsync911 Software and related goods and services were sold and distributed in certain states through a licensed distributor known as Brandon Associates, LLC ("Brandon Associates").  Throughout their relationship with Debtor, Brandon Flanagan and Donald Flanagan held themselves out as officers, agents, and/or representatives of Brandon Associates.

18.     On June 2, 2010, Debtor first entered into a distribution agreement with Brandon Associates, which granted Brandon Associates a non-exclusive license to distribute Debtor's software and related goods and services under the COPSYNC Trademark (the "BACS Agreement"), and which required Brandon Associates provide various services for Debtor's benefit, including government relations and consulting services, distribution or sales services, and certain tech support services all within a specified geographic area.[1]

19.     In particular, under the BACS Agreement, Brandon Associates agreed to distribute Debtor's software and related goods and/or services under the COPSYNC Trademark to local, state, and federal law enforcement and public safety agencies in certain limited markets and geographic areas, namely Massachusetts, Connecticut, New Hampshire, Vermont, Maine, Rhode Island, New Jersey, and Federal Agencies of Washington, D.C.

20.     Pursuant to the BACS Agreement, Debtor paid Brandon Associates $30,000 per month and additional commission generated from any contract secured as a result of Brandon Associates' efforts on Debtor's behalf.

---

[1] *See* Agreement for Professional Services (the "BACS Agreement"), ¶¶ 2 (A)-(C), attached as Exhibit "1."

21.     After the execution of the BACS Agreement, Defendants Brandon D. Flanagan and/or Donald Flanagan formed a new company, Defendant, Brandon-COPsync LLC, for the purpose of distributing Debtor's licensed software and related goods and/or services under the COPSYNC Trademark and/or the COPSYNC911 Trademark.   Upon information and belief, Brandon Associates assigned all of its rights and responsibilities under the BACS Agreement to Brandon-COPsync LLC.

22.     Upon information and belief, Defendant Brandon D. Flanagan was the Chief Executive Officer of Brandon-COPsync LLC and Donald Flanagan was the Manager of Brandon-COPsync LLC, and, throughout the relationship between Debtor and Brandon-COPsync LLC, Defendants Brandon D. Flanagan and Donald Flanagan held themselves out as officers, agents, and/or representatives of Brandon-COPsync LLC.

23.     On May 31, 2011, Debtor and Brandon-COPsync LLC, also entered into a separate agreement whereby Debtor granted to Brandon-COPsync LLC a non-exclusive, non-transferable, royalty-free license to use the COPSYNC Trademark in connection with the distribution of Debtor's software and related goods and services in certain limited markets and geographic areas, namely Massachusetts, Connecticut, New Hampshire, Vermont, Maine, Rhode Island, New Jersey, and Federal Agencies of Washington, D.C. (hereinafter "Trademark License Agreement").[2]

24.     Pursuant to the terms of the Trademark License Agreement, Brandon-COPsync LLC agreed only to use or display the COPSYNC Trademark in a format Debtor approved and Brandon-COPsync LLC specifically agreed not to use any other trademark or service mark in

---

[2] See Trademark License Agreement, attached as Exhibit "2."

combination with the COPSYNC Trademark without the licensor's approval.[3]  Pursuant to the terms of the Trademark License Agreement, the COPSYNC Trademark and all rights therein remained the exclusive property of Debtor; Brandon-COPsync LLC was granted only the right to use the COPSYNC Trademark in accordance with the Trademark License Agreement; and Debtor retained, both during the term of the Trademark License Agreement and afterward, all rights and remedies available to it.[4]  The Trademark License Agreement was to continue coterminous with the term of the BACS Agreement and with the terms of future distribution agreements between the parties.[5]

25.    However, pursuant to the explicit terms of the Trademark License Agreement, termination of the Trademark License Agreement in no way releases the parties from liability for breach of the Trademark License Agreement arising prior to termination of the Trademark License Agreement.[6]

26.    Thereafter, the BACS Agreement was subsequently amended by four separate amendments and a settlement agreement: the First Amendment to the BACS Agreement, executed on or about September 30, 2012;[7] the Second Amendment to the BACS Agreement, executed on or about January 15, 2014;[8] the Third Amendment to the BACS Agreement, executed on or about August 3, 2015, [9] in connection with a settlement agreement executed by

---

[3] *See* Ex. "2," Trademark Licensing Agreement, ¶ 2.1.

[4] *See* Ex. "2," ¶ 2.3.

[5] *See* Ex. "2," ¶ 3.1.

[6] *See* Ex. "2," ¶ 3.3.

[7] *See* First Amendment to the BACS Agreement, attached as Exhibit "3."

[8] *See* Second Amendment to the BACS Agreement, attached as Exhibit "4."

[9] *See* Third Amendment to the BACS Agreement, attached as Exhibit "5."

and between Debtor (and various individuals associated with Debtor), and Brandon-COPsync LLC and Donald B. Flanagan to resolve disputes in a lawsuit in Massachusetts (hereinafter "Settlement Agreement");[10] and the Fourth Amendment to the BACS Agreement, executed on or about November 4, 2016.[11]

27.     In addition to settling certain claims between the parties, the Settlement Agreement amended the BACS Agreement in relevant part by adding an Exhibit A (A/R Aging Detail), adding an Exhibit B (Territories), and amending the Trademark License Agreement in Amendment No. 1.[12]

28.     Exhibit B of the Settlement Agreement, in relevant part, sets forth the territories over which Brandon-COPsync LLC would have either exclusive or non-exclusive rights to sell COPsync911 Software, expiring on September 30, 2017.  The Settlement Agreement also included a First Amendment to the Trademark License Agreement, which continued to grant to Brandon-COPsync LLC a non-exclusive, non-transferable, royalty-free license to use the COPSYNC Trademark in the limited territories defined in the Settlement Agreement, provided, however, that Brandon-COPsync LLC cease referring to itself as "COPsync's 'exclusive' national reseller/distributor (or words to that effect in reference to itself.)"

29.     Under the Third Amendment to the BACS Agreement, Brandon-COPsync LLC agreed to pay $8,200 for Debtor's legal fees and expenses and to pay the amounts reflected in certain invoices issued by the Debtor, as set forth in Exhibit A to the Third Amendment to the BACS Agreement (with total outstanding A/R of $104,951.86) in installments of $2,000 until

---

[10] *See* Settlement Agreement and Mutual Release, attached as Exhibit "6."

[11] *See* Fourth Amendment to the BACS Agreement, attached as Exhibit "7."

[12] *See* Ex. "6."

paid in full, with such invoice amounts to be paid the earlier of the end of the calendar month following receipt of customer payment or 90 days from the date of the invoice.  Failure to pay within ten days of the due date would result in COD payment terms for Brandon-COPsync LLC until becoming current in payments to Debtor.[13]

30.     Notably, as of August 1, 2015 the A/R Aging Detail of outstanding amounts indicated Brandon-COPsync LLC owed Debtor a total of $104,951.86, with interest accruing.[14]

31.     The Third Amendment to the BACS Agreement specifically provided that, "if either party shall, at any time, default in any payment obligation of this Agreement . . . and such default shall remain uncured for ten (10) days following receipt of written notice of the default given by the non-defaulting party," then it is considered an "Event of Default."[15]

32.     Further, the amendment provided that, upon the occurrence of an "Event of Default," the non-defaulting party "shall have the right (a) to terminate this Agreement or (b) in lieu of terminating this Agreement, to declare without notice to the defaulting-party, the entire balance immediately due and payable under this Agreement, or (c) exercise its rights under both (a) and (b)."[16]

33.     The Fourth Amendment to the BACS Agreement, dated November 4, 2016, again amends the BACS Agreement, providing that: (i) the term would extend for an additional five years (or through September 30, 2022), and (ii) payment to Brandon-COPsync LLC would increase, contingent upon Brandon-COPsync LLC paying $50,000 of the amounts currently

---

[13] *See* Third Amendment to the BACS Agreement, attached as Exhibit "5."

[14] *See* Ex. "5."

[15] *See* Ex. "5," 4.1 (iv).

[16] *See* Ex. "5," 4.2.

owed to Debtor by November 10, 2016 and Brandon-COPsync LLC paying an additional $50,000 payment no later than January 31, 2017.[17]

### C. Notice of Default & Termination of the BACS Agreement

34.     Contrary to terms of the BACS Agreement and its amendments, Brandon-COPsync LLC, failed to make the $50,000 payment on November 10, 2016 and failed to make the $50,000 payment on January 31, 2017 (both of which it agreed to pay in the Fourth Amendment to the BACS Agreement), and, by the beginning of June of 2017, had additional amounts outstanding and owing to Debtor pursuant to the terms of the BACS Agreement and its amendments.

35.     Accordingly, on June 2, 2017, COPsync sent a Notice of Default via Federal Express to Brandon-COPsync LLC and addressed to Brandon D. Flanagan, President and CEO of Brandon-COPsync LLC, notifying Brandon-COPsync LLC of its breach of the BACS Agreement and its amendments and of the total outstanding amounts Brandon-COPsync LLC owed to COPsync under the BACS Agreement and its amendments.[18]

36.     In that Notice of Default, COPsync specifically notified Brandon-COPsync LLC that, because Brandon-COPsync LLC repeatedly failed to remit payment to Debtor pursuant to its payment obligations under Section 3B(ii) of the BACS Agreement, as amended, Brandon-COPsync LLC was in default and demanded that Brandon-COPsync LLC cure same within ten (10) days.

37.     COPsync's Notice of Default also explicitly notified Brandon-COPsync LLC that Debtor's Notice of Default constituted Debtor's written notice of default to the defaulting party,

---

[17] *See* Ex. "7," Fourth Amendment to the BACS Agreement.

[18] *See* COPsync, Inc.'s June 2, 2017 Notice of Default to Brandon-COPsync, LLC, attached as Exhibit "8."

Brandon-COPsync LLC pursuant to the terms of the BACS Agreement, as amended, citing Section 4.1(vi) of the BACS Agreement.[19]

38.     On June 2, 2017, Brandon-COPsync LLC owed Debtor $636,792.00.[20]

39.     Brandon-COPsync LLC did not cure the defaults identified in Debtor's Notice of Default, and the BACS Agreement, by its own terms as amended, terminated as of Monday, June 12, 2017.

40.     Thereafter, on June 30, 2017, Brandon-COPsync LLC, was involuntarily dissolved by the Massachusetts Secretary of State.[21]

41.     Despite the termination of the BACS Agreement and dissolution of Brandon-COPsync LLC that had each already occurred, Brandon D. Flanagan, allegedly on behalf of dissolved Brandon-COPsync LLC, responded on September 21, 2017 by sending a purported "Notice of Default" letter to Debtor alleging that Debtor had breached the (then-terminated) BACS Agreement and sought unsubstantiated damages that it "believe[d] . . . resulted in losses to BACS and its customers in an amount equal to no less than $1,000,000.00."[22]   Brandon-COPsync LLC's Notice of Default letter also sought damages for the royalties it alleges must have been earned but not paid to it by Debtor pursuant to the parties' Settlement Agreement, estimating the losses to be $25,200.00.[23]

---

[19] *See* Ex. "8," COPsync Notice of Default.

[20] *See* Ex. "8," COPsync Notice of Default.

[21] Corporations Division: Business Entity Summary, MASS. SECRETARY OF STATE, (Jan. 1, 2019), http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpSummary.aspx?FEIN=450973155&SEARCH_TYPE=1, attached hereto as Exhibit "9."

[22] *See* Brandon-COPsync LLC's September 21, 2017 Notice of Default to COPsync, Inc., attached as Exhibit "10."

[23] *See* Ex. "10," Brandon-COPsync LLC's Notice of Default.

D.     **The COPsync, Inc. Bankruptcy**

42.      On September 29, 2017, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code before the Bankruptcy Court for the Eastern District of Louisiana. The Debtor continued lean operations for purposes of completing the Sale and other wind-down efforts as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

43.      From the outset, Debtor listed the outstanding debt owed by Brandon-COPsync LLC in its schedules (as amended). Debtor's Amended Schedules filed in the Bankruptcy list the debt owed by Brandon-COPsync LLC, as referenced in Debtor's Notice of Default to Brandon-COPsync LLC. Specifically, the Amended Schedules list the right to collect against Brandon-COPsync LLC receivables in the amount of $661,705.75.[24]

44.      On September 30, 2017, Debtor filed a Motion for Entry of Orders (I) Approving the Sale of Assets Free and Clear, (II) Approving Bid Procedures in Connection with the Sale, (III) Approving the Assumption and Assignment of Certain Contracts and Leases and Approving the Procedures to be Employed with Assumption and Assignment, (IV) Approving Debtor's Form of Notice, and (V) Granting Related Relief (the "Sale Motion"). [ECF No. 6].

45.      Through its Sale Motion, Debtor sought the sale of substantially all its assets (excluding a few specifically excluded assets) to Kologik Capital, LLC. After Debtor had filed for bankruptcy protection, on September 29, 2017, Kologik Capital, LLC, entered into an Asset Purchase Agreement ("APA") with Debtor to acquire the majority of Debtor's assets. Specifically, the list of Purchased Assets provided that Kologik purchased "[a]ll of Seller's property other than those assets specifically excluded in Exhibit B," of which the main excluded

---

[24] This amount was erroneously listed as $1.2 million in original bankruptcy schedules. Schedule A/B, Part 11, No. 74 [ECF No. 60].

asset was the "Brandon-COPsync LLC receivable" – the outstanding A/R of $636,792.00 (plus interest) owed to COPsync as of June 2, 2017.[25]

46.     On October 12, 2017, Brandon-COPsync LLC, which was given proper notice of the Debtor's Sale Motion, filed a consent motion for an extension of time to file its objections to Debtor's Sale Motion.  [ECF No. 49].

47.     On October 13, 2017, Brandon-COPsync LLC also filed a Proof of Claim in the Bankruptcy Case for "breach of contract claims, indemnification obligations," attaching its September 21, 2017 Notice of Default to Debtor, and seeking $1,025,200 (the amount it alleged was owed in its Notice of Default correspondence) exclusive of legal fees and costs.  [ECF Claim No. 3-1].

48.     As noted above, at the time Brandon-COPsync LLC filed both its motion for extension of time to object to the Sale Motion and well as its Proof of Claim in the Bankruptcy Case, however, the Massachusetts Secretary of State had administratively dissolved Brandon-COPsync LLC on June 30, 2017.[26]

49.     And, although Brandon-COPsync LLC was on notice of the APA and pending Sale Motion in the Bankruptcy Case – and despite seeking an extension of time within which to review and object to (if necessary) the bid procedures relating to same – it ultimately never filed any objection to the bid procedures, the Sale Motion or the ultimate sale of the assets in the Bankruptcy Case.

50.     Accordingly, on October 19, 2017, the Court issued an order (A) Authorizing and Approving Bid Procedures to Be Employed in Connection with the Proposed Sale of the

---

[25] *See* Sale Order, Ex. 1, APA Exhibit A "Purchased Assets", p. 15 [ECF No. 125-1]; *see also* Ex. "10," Brandon-COPsync LLC's Notice of Default.

[26] *See* Ex. "9,"  Mass. Sec. of State Business Entity Search.

Debtor's Assets, (B) Scheduling an Auction and Sale Hearing, (C) Authorizing and Approving Assignment Procedures, (D) Approving the Manner and Form of Notice of the Auction and Assignment Procedures, and (E) Granting Related Relief (the "Bid Procedures Order").  The Bid Procedures Order established bidding procedures for parties other than Kologik, and established November 20, 2018 as the date of an auction if Debtor received more than one qualified bid. [ECF No. 66].  The Bid Procedures Order also established November 20, 2018 as the date of the hearing on the Debtor's Sale Motion.  No other parties filed bids.

51.  On November 21, 2017, after the Debtor's Sale Motion came for hearing, the Bankruptcy Court entered the Sale Order, approving the sale of Debtor's assets to Kologik.  And, on November 22, 2017, following approval by the Bankruptcy Court, Debtor and Kologik executed a Bill of Sale and Assignment for the foregoing assets.  Following the purchase, Debtor executed assignments to Kologik of the purchased intellectual property for recordation.

52.  On September 14, 2018, Debtor sought to confirm the Third Amended Chapter Plan of Liquidation Pursuant to Chapter 11 of the U.S. Bankruptcy Code (i.e., the Third Amended Plan).  [ECF No. 326].

53.  The Court confirmed the Third Amended Plan on September 21, 2018.  [ECF No. 335].

54.  The Third Amended Plan and the Liquidation Trust Agreement provide the Liquidation Trustee broad rights to pursue causes of action of the Debtor, including those related to pre-petition contracts and Brandon-COPsync's outstanding accounts receivable.  Third Amended Plan,  ¶¶ 1.4, 5.4, and 5.18 (xvi), [ECF No. 326]; *see also* Exhibit B to Order Confirming Third Amended Plan, ¶ 2.6 (a) [ECF No. 335-2].

E.     **Defendants' Improper Collection of COPsync911 Fees**

55.     Upon information and belief, after the dissolution of Brandon-COPsync LLC and termination of the BACS Agreement in June of 2017, and unknown to Debtor, Defendants continued to sell and distribute COPsync911 Software, all the while using the licensing fees and payments received from COPsync's customers (including unwitting public entities and law enforcement) to finance development of their own competing software.

56.     Ultimately, by November 28, 2017, Defendants formed a new company, In Force Technology, LLC, which sold the competing software based on COPsync911, called "In Force 911" software, to the COPsync911 customers.

57.     Upon information and belief, in the months after the dissolution of Brandon-COPsync LLC in June of 2017 and before the formation of In Force Technology, LLC in November of 2017, Defendants sold the competing software product under the COPSYNC Trademark and COPSYNC 911 Trademark.

58.     On information and belief, prior to and after the Debtor Bankruptcy Petition Date, Defendants represented to potential and/or existing customers of the COPsync911 Software that Brandon-COPsync LLC (and/or In Force Technology, LLC) had the rights to the COPsync911 Software or rights thereto in order to confuse the customers/end-users of Debtor and to induce those customers/end-users into paying one or more of Defendants for continued use of the COPsync911 Software or for use of Defendants' competing software that customers were led to believe was affiliated with the COPsync911 Software.

59.     On information and belief, Defendants improperly collected and retained payments from COPsync911 Software customers/end-users prior to and during the Bankruptcy (and prior to the sale of Debtor's assets in Bankruptcy) and continue to improperly collect and

retain payments, including renewal fees, from customers/end-users, all of which rightfully belong to Debtor prior to the closing under the APA or to Kologik Capital, LLC thereafter.

60.     Moreover, on information and belief, prior to and after the Debtor Bankruptcy Petition Date (including the months before and after the dissolution of Defendant Brandon-COPsync LLC in June of 2017), one or more Defendants, by themselves or through their affiliates, collected software licensing fees and fees for the use of the software from customers/end-users of the COPsync911 Software prior to the expiration of their contracts with Debtor and continued to charge customers/end-users of the COPsync911 Software for license renewal fees for use of the COPsync911 Software even though no Defendant had the right to distribute or license the COPsync911 Software or otherwise "renew" any such contracts after the termination of the BACS Agreement as amended and the sale of Debtor's assets to Kologik Capital, LLC in the Bankruptcy Case.

61.     Upon information and belief, Defendants Brandon and Donald Flanagan continued to collect licensing fees for Debtor's software after the dissolution of Defendant Brandon-COPsync LLC through a new company In Force Technology, LLC.  For example, as late as January of 2018, In Force Technology, LLC, purported to sell the City of Westfield, Massachusetts a product described as "COPsync911 Software Subscription & Licensing Fee" for $14,850:



## IV.    CLAIMS FOR RELIEF

### COUNT I
### Breach of Contract

62.     Trustee specifically realleges and incorporates by reference each and every allegation contained in the Complaint as though fully set forth in this Claim.

63.     As alleged herein, Brandon-COPsync, LLC failed to remit payments to Debtor it was obligated to pay under the BACS Agreement, and, as such, Brandon-COPsync LLC was in breach of its obligations to pay Debtor pursuant to the BACS Agreement, as amended.

64.     On June 2, 2017, Debtor provided a Notice of Default to Brandon-COPsync LLC for its failure to remit payments under the BACS Agreement, as amended, in the amount of $636,792.00.

---

[27] *See* Westfield, Massachusetts Invoice, attached as Exhibit "10."  Notably, the header of the Invoice lists "INFORCE TECHNOLOGY LLC Formerly Brandon COPsync LLC."

65.     Defendants failed to remit any payment to Debtor.

66.     Defendants are thus liable for breach of contract to the Debtor and have proximately caused damages to the Debtor in the amount of $661,705.75, as of December 18, 2017, which is due and payable in exchange for the services provided to the customers by Debtor.

67.     Further, Defendants' continued collection and possession of licensing fees for the use of the COPsync911 Software constitutes a breach of the BACS Agreement, and Defendant Brandon-COPsync LLC owes such amounts to Debtor.

68.     Accordingly, Defendants are liable to Debtor for their breaches of contract and damages associated therewith, including but not limited to, the accounts receivable plus applicable interest and the licensing fees owed to Debtor.

## COUNT II
### Turnover of Estate Property Pursuant to 11 U.S.C. § 542(a)

69.     Trustee specifically realleges and incorporates by reference each and every allegation contained in the Complaint as though fully set forth in this Claim.

70.     Section 542(a) of the United States Bankruptcy Code provides:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542.

71.     Section 541 of the United States Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case."  11 U.S.C. § 541(a)(1).

72.     The estate assets and/or receivables, including but not limited to the accounts receivable owed (in the amount of $661,705.75) and licensing fees from customers of the COPsync911 Software improperly collected and retained by Defendants, are property of the Debtor's estate that are in Defendants' possession.

73.     Defendants have and continue to possess licensing fees for the use of the COPsync911 Software, and continue to possess and have failed to deliver the outstanding accounts receivable in the amount of $661,705.75, as of December 18, 2017, which is due and payable in exchange for the services provided to the customers by Debtor.

74.     The Defendants have failed to deliver the estate assets and receivables to the Debtor.

75.     Therefore, pursuant to 11 U.S.C. § 542(a), the Debtor is entitled to turnover of the estate assets or receivables.

## COUNT III
### Willful Stay Violation – Section 362(a)(3)

76.     Trustee specifically realleges and incorporates by reference each and every allegation contained in the Complaint as though fully set forth in this Claim.

77.     Section 362(a)(3) of the United States Bankruptcy Code provides, in pertinent part:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362 (a)(3).

78.     The Defendants' withholding of the estate assets and/or receivables is an act to take possession of the property of the Debtor's estate in violation of the automatic stay.

79.     In particular, Defendants' continued collection and possession of licensing fees for the use of the COPsync911 Software, and continued possession of the outstanding accounts receivable in the amount of $661,705.75, as of December 18, 2017, which is due and payable in exchange for the services provided to the customers by Debtor, violates the automatic stay.

80.     Actions taken in violation of the automatic stay are void.

81.     The Trustee requests that this Court issue a judgment that Defendants' withholding of the estate assets and/or receivables is in violation of the automatic stay under Section 362(a)(3) of the Bankruptcy Code and directing the Defendants to deliver the estate assets and/or receivables to the Trustee on a timely basis.

## COUNT IV
## Objection to Proof of Claim

82.     Trustee specifically realleges and incorporates by reference each and every allegation contained in the Complaint as though fully set forth in this Claim.

83.     Defendant Brandon-COPsync LLC filed Claim No. 3 in the amount of $1,025,200.00 on October 13, 2017.

84.     The Trustee objects to Claim No. 3 and disputes that Brandon-COPsync LLC is owed any such sum by Debtor.

85.     Furthermore, in addition to Brandon-COPsync LLC not being entitled to any such sum by Debtor, Brandon-COPsync LLC also lacked the legal capacity to file Claim No. 3 as it did not exist as an entity at the time it filed Claim No. 3.

86.     Accordingly, the Trustee requests that this Court disallow Claim No. 3 in its entirety.

87.     The Trustee objects to Claim No. 3 on the merits, and moreover, pursuant to Section 502(d) of the United States Bankruptcy Code, to the extent the claim is allowed, Trustee

objects to the allowance of Claim No. 3 unless and until the property of the Debtor's estate is turned over pursuant to Section 542 of the United States Bankruptcy Code. *See* 11 U.S.C. §§ 502, 542.

**RESERVATION OF RIGHTS**

88.     The Trustee specifically reserves all rights to seek amendment of this Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure, made applicable to these proceedings pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure.

**V.      PRAYER FOR RELIEF**

WHEREFORE, the Trustee respectfully prays that this Court enter judgment in his favor and against Defendants:

a.   awarding the Trustee breach of contract damages in the amount of $661,705.75, plus applicable interest and costs;

b.   awarding a judgment against the Defendants for attorneys' fees pursuant to the BACS Agreement between the parties;

c.   requiring the Defendants turnover to the Trustee the estate assets of the Debtor, COPsync, Inc.;

d.   declaring that Defendants violated the automatic stay under Bankruptcy Code Section 362 by withholding the Debtor's receivables and directly Defendants to deliver the receivables to the Trustee and awarding damages for same;

e.   disallowing and/or expunging the proof of claim objected to herein; and

f.   awarding the Trustee such other and further relief as may be just and proper.

Respectfully submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

BY:     */s/  Benjamin W. Janke*
       BENJAMIN W. JANKE (Bar Roll #31796)
       MEGHAN E. CARTER (Bar. Roll #35074)
       201 St. Charles Avenue, Suite 3600
       New Orleans, Louisiana 70170
       Telephone:  504-566-5200
       Facsimile:  504-636-4000

       **Counsel for H. Kenneth Lefoldt, Jr.,
       Chapter 11 Trustee**